IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

DEBRA SPIRKO,                          )        No.    2:23-cv-1821
                                       )
    Plaintiff                      )
                                       )        CIVIL COMPLAINT
    vs.                            )
                                       )
COUNTY OF ALLEGHENY, COUNTY            )
EXECUTIVE RICHARD FITZGERALD           )
                                       )
    Defendant.                     )

Filed on Behalf of:
Plaintiff

Counsel of Record for
This Party:

James L. Welsh, III, Esquire
PA I.D. #58790
THE WELSH LAW GROUP LLC

3875 Franklintowne Court
Suite 130
Murrysville, PA  15668
724-519-2122

e-mail:
jwelsh@thewklaw.com

JURY TRIAL DEMANDED

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DEBRA SPIRKO, | ) | No. |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| COUNTY OF ALLEGHENY, COUNTY | ) | |
| EXECUTIVE RICHARD FITZGERALD | ) | |
| | ) | |
| Defendants. | ) | JURY TRIAL DEMANDED |

## CIVIL COMPLAINT

Plaintiff, Debra Spirko, by and through the undersigned counsel brings this action seeking legal and equitable relief and in support alleges the following:

### JURISDICTION

1.     The Jurisdiction of this Court is invoked pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e-5(t)(l); 42 U.S.C. §1981A and 28 U.S.C. §1331.

2.     Plaintiff has satisfied all administrative prerequisites to suit under Title VII because:

    a.     Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission and cross-filed with the Pennsylvania Human Relations Commission.

    b.     The EEOC issued a Notice of Right to Sue.

    c.     This Complaint is filed within 90 days of receipt of that notice.

    d.     Or, Plaintiff is entitled to piggyback on the Complaint filed by Shane Chesher, as originally filed.

    e.     Or, in the alternative, Plaintiff is excused from filing with the EEOC and/or the PHRC because Defendant terminated other employees for similar reasons at the same time Defendant terminated Plaintiff's employment. Because some of those employees filed charges with the EEOC and the PHRC, Plaintiff may piggyback their claims alleged in this lawsuit pursuant to the single-filing rule.

1

    f.    In the alternative, Plaintiff is entitled to an exemption or exception because their claims arise "out of" or are "reasonably related" to claims that similarly situated Plaintiffs previously filed with the EEOC and/or the PHRC.

    g.    Defendants clearly knew that all Plaintiffs who filed for a religious exemption which was wrongfully denied were adequate put Defendant on notice that Defendants' vaccine mandate would be challenged as a violation of Title VII and/or the ADA.

3.    Defendant, County of Allegheny, has a business address of 920 City-County Building, 414 Grant Street Pittsburgh PA 15219. Defendant regularly conducts business in Pennsylvania and was Plaintiff's employer within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e(b).

4.    Defendant, Rich Fitzgerald, is the County Executive of Allegheny County.

## NATURE OF ACTION AND FACTUAL BACKGROUND

5.    This is an action brought under 42 U.S.C. §1983, Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000 et seq., and the laws of the Commonwealth of Pennsylvania, to hold Allegheny County, via its policymaker, County Executive Rich Fitzgerald, for violations of Plaintiff's fundamental and constitutional right to equal protection under the law and the free exercise of his religion and to be free from discrimination in employment.

6.    Plaintiff seeks declaratory relief and compensatory damages, as well as reinstatement, nominal, actual, and punitive damages, and other remedies for harms arising from the *ultra vires* announcement of Defendant County Executive Rich Fitzgerald that all county employees must be vaccinated for COVID-19 on or before December 1, 2021, or their employment

would be terminated (hereinafter "Fitzgerald Mandate"), and for the discriminatory and unlawful implementation of the Fitzgerald mandate.

7. The Fitzgerald Mandate *ab initio,* violated fundamental constitutional rights, both facially and as applied, and arbitrarily and capriciously discriminated against employees with sincere religious objections to vaccination- even though the employees pose no direct threat to others because of their objections - and placed unconstitutional conditions on employment.

8. In implementing the Fitzgerald Mandate, Allegheny County adopted facially unconstitutional standards and policies, subjecting Plaintiff and thousands of other employees to, per se, unconstitutional religious harassment.

9. Defendant Fitzgerald sanctioned and encouraged this discrimination. In public comments, he stated:

    a. Folks who are not vaccinated are going to be isolated from society.

    b. It becomes very difficult for the unvaccinated to really get full employment and quite frankly function and what's happening in society right now.

    c. Week after week, we'll see how safe they are, how effective they are, and how dangerous it is not to be vaccinated.

    d. These vaccine cards are something people are going to be showing a lot of.

    e. However long you are working at your place of employment, to know that the folks that are coming in contact with you are vaccinated. So, you know you're not going to be taking that illness back to your family or getting yourself sick.

    f. We feel very comfortable that this can be a condition of employment ... and obvious this can go to court.

10.     Under Defendant Fitzgerald's openly discriminatory policy, Plaintiff, with personally held religious beliefs, was singled out for discriminatory treatment by the County.

11.     In addition to being discriminatory, *ultra vires,* and violative of constitutional rights, the Fitzgerald Mandate was irrational.

12.     COVID-19 vaccine mandates did not stop the spread of SARS-CoV-2 in the workplace.  The vaccine may blunt the severity of the disease, but the evidence does not support an assertion that the COVID-19 vaccine stops infection with and transmission of SARS-CoV-2 to others.

13.     Moreover, far less invasive measures were available to ensure public safety than forcing Plaintiff to violate his religious beliefs or lose his job.

14.     The Fitzgerald Mandate is an outlier. At no time did the Commonwealth of Pennsylvania require its employees to be vaccinated as a condition of employment.

15.     The Fitzgerald Mandate was also overbroad. There was no option to get tested in lieu of vaccination. Nor was natural immunity recognized, even though the data overwhelmingly shows that natural  immunity is more robust and durable than vaccine immunity. Moreover, neither remote employees nor those who could easily work outside were provided exemptions.

16.     Alternatively, the Fitzgerald Mandate was underinclusive. Unvaccinated civilians were permitted to enter buildings and conduct business with County employees.  If the unvaccinated could safely interact with County employees each day, there was no reason why the small percentage of staff with a religious objection to vaccination could not also be safely accommodated.

17.     Excluding unvaccinated staff by termination did not impact mitigating the spread of COVID-19.

18.     The County is in a crisis and desperately needs workers to fill its positions, especially experienced and dedicated workers like Plaintiff in this lawsuit.

4

19.     Plaintiff has dedicated his or her career to serving the citizens of Allegheny County.

20.     As more particularly pleaded below, Defendants herein wrongfully and with willful and reckless indifference to Plaintiffs rights terminated his employment, which conduct was egregious and thus warrants an award of punitive damages.

21.     Plaintiff is a life-long devout Christian.  Plaintiff has been active in the local church for many years.   The Defendant accepted his or her religious belief as being sincerely held and never once questioned his/her faith or opposition to the covid19 vaccine.

22.     In response to the Covid-19 vaccine mandate, Plaintiff submitted a religious exemption. In his or her exemption request, he or she informed Defendant that he or she believes that their body is a holy temple of the Holy Spirit and that being vaccinated would entail going against their  convictions and the commands of God. Plaintiff, also based upon their Christian beliefs does not believe in abortion. All of the three available vaccines used fetal cells in the creation and/or testing and/or manufacturing which is against his or her religion.

23.     At no time did Defendant ever engage in any meaningful interactive process with Plaintiff to determine whether there existed any reasonable accommodations for his or her sincerely held religious beliefs.   It is believed and therefore averred that the Defendant never had any intention of granting Plaintiff's religious exemption. Rather, the Defendant's intention was to deny all or as many exemptions as possible and force all of its workforce to be vaccinated. Defendant simply manufactured a sham exemption procedure , pretended to listen at Plaintiff's Loudermill hearing then sent a template, fill-in the blank letter denying his or her exemption.

24.     Plaintiff also has a sincerely held religious belief that every child's life is sacred because they are made in the image of God. *See Genesis* 1:26-27 (NABRE).

5

25.     It is believed and therefore averred that Defendant had supplied Plaintiff with reasonable accommodations in the form of personal protection equipment, social distancing and/or sanitizing throughout the pandemic. In addition, weekly testing was required. These reasonable accommodations suddenly became an undue hardship when the vaccine mandate was put into place on December 1, 2021.  Defendant does not require visitors in its facility to be vaccinated.

26.     Respondent was allowed to continue to work until December 2, 2021. On that day, Defendant informed Plaintiff that he or she was immediately terminated. Their termination was solely due to his or her unvaccinated status. Defendant perceived Plaintiff as disabled due to their unvaccinated status.

27.     Plaintiff offered to continue to use the reasonable accommodations listed above in lieu of getting the Covid 19 vaccine.  Defendant ignored these requests and was terminated.

28.     Defendant never challenged the sincerity or validity of Plaintiff's sincerely held religious beliefs. At no time did the Defendant engage in the interactive process to question their beliefs against the vaccine. Rather, Defendant simply admitted by silence or acquiesce that Plaintiff's beliefs were sincerely held. Defendant has waived the right to challenge the sincerity or validity of Plaintiff's religiously held belief against the vaccination.

29.     Defendant's sole reason given for denying Plaintiff's religious exemption was it would create an undue hardship on Allegheny County. At no time did Defendant, Allegheny County, ever explain the reasons granting a religious exemption was an undue hardship.

30.     It is believed and therefore averred, that Defendant engaged in a policy of a

6

blanket denial of all requests for religious and/or medical exemptions and instead claiming undue hardship as Defendant's goal was to seek 100% vaccination of all its employees and to purge its payroll of the unvaccinated for Defendant's financial gain.

31.     Plaintiff had a sincerely held religious belief that his or her body is a temple of the Holy Spirit, and that to inject medical products that have any connection whatsoever to aborted fetal cell lines would be defiling the temple of the Holy Spirit. *(See 1 Corinthians* 6: 15-20).

32.     Plaintiff requested that the wearing of a mask and his or her consent to submit to Covid-19 testing at any time, be approved as a reasonable accommodation to receiving the Covid-19 vaccines because of strongly held religious belief precluding the imposition of the vaccines.

33.     The aforesaid accommodations were reasonable because, *inter alia,* the OSHA rules regarding workplace vaccine mandates provided those precise accommodations for employees whose sincerely held religious beliefs precluding imposition of Covid-19 vaccination. *See* 29 C.F.R. §§1910.501(g);and 1910.501(1)(1) *See also* 86 Fed. Reg. No. 212 at 61552-53 (Nov. 5, 2021)(noting wearing face covering and/or testing is acceptable accommodation as matter of law); *id.,* at 61553 (noting testing acceptable accommodation for religious objection as matter of law).

34.     Despite Plaintiff's request for accommodation of his or her sincerely held religious belief, Defendant refused to accommodate Plaintiff.

35.     Defendant failed to engage in the interactive process with Plaintiff.

36.     Defendant did not offer an alternative accommodation to Plaintiff's requests other than discharge.

37.    Rather, in a letter of,  Defendant simply fired Plaintiff because the accommodation would cause an undue hardship.

## COUNT I

### (Liability under the Free Exercise Clause)

### Plaintiff v. All Defendants

38.    Plaintiff incorporates all the previous paragraphs herein.

39.    Defendants at all times relevant to this action were acting under color of state law.

40.    Acting pursuant to a policy of Defendant County Executive Fitzgerald, Defendants unlawfully deprived Plaintiff of his or her constitutional right to freely exercise their religion in violation of the First Amendment.

41.    The Free Exercise Clause of the First Amendment, applicable to the States under the Fourteenth Amendment, provides that Congress (and by extension, State and City governments) shall make no law prohibiting the free exercise of religion.

42.    Laws that burden religion are subject to strict scrutiny under the Free Exercise Clause unless they are neutral and generally applicable.

43.    The government fails to act neutrally when it proceeds in a manner intolerant of religious beliefs or restricts practices because of their religious nature.

44.    A law is not generally applicable if it invites the government to consider the particular reasons for a person's conduct by providing a mechanism for individualized exemptions.

45.    A law is not generally applicable if exceptions are carved out on its face, in practice, or if it is just one of many specifically applicable mandates relating to the same issue.

46.    A law that is overinclusive in its restrictions on religious activity or beliefs by encompassing more protected conduct than necessary to achieve its goal is invalid.

47.     Laws that burden religious exercise must survive strict scrutiny if they are not neutral and generally applicable or if they are overinclusive or underinclusive.

48.     A government policy can survive strict scrutiny under the Free Exercise Clause only if it advances the interests of the highest order and is narrowly tailored to achieve those interests. Put another way, so long as the government can achieve its interests in a manner that does not burden religion, it must do so.

49.     The Fitzgerald Mandate required all County employees to be vaccinated and acknowledged that religious accommodations were required to be considered; however, the Fitzgerald Mandate contained no other guidance as to how the County was to determine which "accommodations" were "reasonable" and "otherwise required by law." Adjudicators of requests were, therefore, given discretion to determine whether or not to grant exemption requests based on their own individual determinations as to whether such requests are "reasonable" or "required by law." Or, Defendants were instructed by Fitzgerald to deny all exemption requests under the guise of hardship.

50.     Because the Fitzgerald Mandate gives the County unrestricted discretion to determine the validity of various religious exemption applications, it is, by definition, not neutral or generally applicable and thus must be subject to strict scrutiny.

51.     The County implemented the Fitzgerald Mandate through a facially unconstitutional and discriminatory set of standards, which produced arbitrary results.

52.     The United States Supreme Court has made it clear that the Government fails to act neutrally when it proceeds in a manner that is intolerant of religious beliefs.

53.     The Fitzgerald Mandate is overinclusive on its face. As one of many examples, it requires all employees of the County to submit to vaccination, no matter where they work. The

9

Fitzgerald Mandate included employees who did not work in person and those who worked primarily outside. There is no rational basis for this. The Fitzgerald Mandate is invalid on its face as a result.

54.     The Fitzgerald Mandate is not "narrowly tailored" to promote the compelling interests of the County with the least amount of interference with County employees' religious beliefs and practices. Rather, as implemented by the County, it was drafted to inflict maximum harm on persons who believe vaccination is unholy by denying the greatest number of exemption applications with the least due process. One wonders whether the Defendants used the vaccination issue as a pretext to cut expenses on the backs of County employees who hold unpopular religious beliefs.

55.     The First Amendment requires the Court to apply strict scrntiny to the Fitzgerald Mandate and its implementation because that process involves an individualized assessment of the reasons why County employees refuse to be vaccinated.

56.     In U.S. Navy Seals 1-26 v. Eiden. (N.D. Tex. Jan. 3, 2022), which involved requests for religious exemptions from a COVID-19 mandate imposed by the United States military, the Court found that the application process imposed by the United States Navy invoked the requirement of strict scrutiny:

> The Navy's mandate is not neutral and generally applicable. First, by accepting individual applications for exemptions, the law invites an individualized assessment of the reasons why a service member is not vaccinated. . . . Consequently, favoritism is built into the mandate ... (citing Fulton v. City of Phila., 141 S. Ct. 1868, 1877 (2021) -- "A law is not generally applicable if it invites the government to consider the particular reasons for a person's conduct by providing a mechanism for individualized exemptions.")

57.     The deleterious effect of the unfair denials is that employees whose applications were denied by this corrupt process were required either to elect by December 1, 2021, to comply with the Fitzgerald Mandate or face termination.

58.     The Fitzgerald Mandate was unconstitutional on its face and as applied.

59.     The Court must exercise its power to prevent manifest injustice to the Plaintiff's

rights whose exemption application was denied by unjust and unconstitutional proceedings.

WHEREFORE, Plaintiff asks the Court to declare that the Fitzgerald Mandate is invalid on its face and as applied to the Plaintiff because it violates the Free Exercise Clause of the First Amendment to the United States Constitution and to order the County to restore Plaintiff to his county employment with back pay, lost wages, medical expenses, interest, restoration of time in service and seniority, and to award actual, consequential, compensatory, pecuniary, and punitive damages to Plaintiff, and costs related to commencing and prosecuting this action, and any other relief this Court deems fair and equitable.

## COUNT II

### (Fourteenth Amendment - Equal Protection Clause)

60.    Plaintiff incorporates all the previous paragraphs herein.

61.    By their actions, as described herein, Defendants, acting under color of statute, ordinance, regulation, custom, or usage, subjected Plaintiff to the deprivation of the rights, privileges, or immunities secured by the United States Constitution and Commonwealth of Pennsylvania Constitution.

62.    The Fitzgerald Mandate violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution (and the corresponding provision of the Commonwealth of Pennsylvania Constitution) because it discriminates against unvaccinated people who need to exercise their fundamental rights to refuse experimental vaccines that conflict with their sincerely held religious beliefs.

63.    As applied by the County, the Fitzgerald Mandate also discriminates against minority religious viewpoints.

64.    There is no rational basis for this discrimination. Plaintiff poses no more danger to

others than a person who is vaccinated. Both groups are equally able to spread Covid-19. When the mandate went into effect, it was already well known and published that vaccinated people were more likely to contract or transmit Covid-19.

65. The policy of discriminating based on an individual's willingness or ability to give up their deeply held religious beliefs shocks the conscience. It cannot be justified as relating to any rational, permissible goal. It is not grounded in science but rather in the effort to coerce people into waiving their protected rights.

66. Due to the discriminatory regulation, Plaintiff faced the loss of his employment, ability to practice his vocation, contractual rights, and violation of civil rights and liberties.

67. Moreover, the policies adopted by the County facially discriminate against Plaintiff based on religion by refusing to afford accommodations.

68. The acts or omissions of Defendants were conducted within the scope of their official duties and employment under the color of law.

69. While performing those duties, Defendants intentionally deprived Plaintiff of securities, rights, privileges, liberties, and immunities secured by the Constitution of the United States of America and the Commonwealth of Pennsylvania by arbitrarily discriminating against him based on religious beliefs.

WHEREFORE, Plaintiff asks the Court to declare that the Fitzgerald Mandate is invalid on its face and as applied to the Plaintiff because it violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and to order the County to restore Plaintiff to his County employment with back pay, lost wages, medical expenses, interest, restoration of time in service and seniority, and to award actual, consequential, compensatory, pecuniary, and punitive damages to Plaintiff, and costs related to commencing and prosecuting

this action, and any other relief this Court deems fair and equitable.

## COUNT III

### (Violation of Fourteenth Amendment - Deprivation of Due Process)

70.    Plaintiff incorporates all the previous paragraphs herein.

71.    By their actions, as described herein, Defendants, acting under color of statute, ordinance, regulation, custom, or usage, subjected Plaintiff to the deprivation of the rights, privileges, or immunities secured by the United States Constitution and Commonwealth of Pennsylvania Constitution.

72.    The Constitutional right of procedural due process provided in the Fourteenth Amendment encompasses the right to notice, an opportunity to be heard, and a fair, unbiased decision sufficient to adequately protect the rights at stake.

73.    The Fitzgerald Mandate, both facially and as applied, denied Plaintiff a meaningful right to be heard.

74.    No notice was given to articulate the reasons that applications for accommodations were denied. Instead, arbitrary and capricious autogenerated notices were provided that failed to individually assess each applicant or provide a meaningful evaluation of their request for religious accommodation.

75.    The decision-makers were inherently biased and conflicted. Given the property interests at stake, the process was woefully inadequate.

76.    The Fitzgerald Mandate set no lawful standards by which the Plaintiff could compare the decisions made with respect to his individual exemption applications. On the contrary, the Fitzgerald Mandate permitted the Defendants to make decisions in Plaintiffs case without any procedural protections, without the right to rebuttal to the Defendants' input, and without applying

rational standards.

77.    For these reasons, the Fitzgerald Mandate, as applied, rendered the religious accommodation process unconstitutionally vague and in contravention of the procedural due process clause of the Fourteenth Amendment.

WHEREFORE, Plaintiff asks the Court to declare that the Fitzgerald Mandate is facially invalid and as applied because it is unconstitutionally vague in violation of the Due Process Clause of the Fourteenth Amendment to the United States Constitution and to order the County to restore Plaintiff to his county employment with back pay, lost wages, medical expenses, interest, restoration of time in service and seniority, and to award actual, consequential, compensatory, pecuniary, and punitive damages to Plaintiff, and costs related to commencing and prosecuting this action, and any other relief this Court deems fair and equitable.

## COUNT IV

### (Fourteenth Amendment- Substantive Due Process)

78.    Plaintiff incorporates all the previous paragraphs herein.

79.    By their actions, as described herein, Defendants, acting under color of statute, ordinance, regulation, custom, or usage, subjected Plaintiff to the deprivation of the rights, privileges, or immunities secured by the United States Constitution and Commonwealth of Pennsylvania Constitution.

80.    The Supreme Court has recognized that the Fourteenth Amendment protects individuals' privacy rights.    A "forcible injection ...    into a nonconsenting person's body represents  a substantial interference with that person's liberty." Washington v. Harper, 494 U.S. 210, 229 (1990).

81.    Forcing Plaintiff to get an injection for a virus that presents a near-zero risk of death

or illness to him and which does not prevent transmission to others violates the liberty and privacy interests of the Fourteenth Amendment.

82.      As well, or in the alternative, this right to refuse experimental medicine is secured by the Due Process Clause of the United States Constitution and corresponding provisions in the Commonwealth of Pennsylvania Constitution and by the laws and regulations of the Commonwealth of Pennsylvania, to be free from burdens on rights deemed "fundamental" in nature.

83.      All of the COVID injections are still experimental. They were rushed to market in a matter of months, skipping years of the normally required testing process.

84.      The only available vaccines in this country are available under Emergency Use Authorization, which forbids compulsory mandates.

85.      The FDA has approved one vaccine - Pfizer's "Comirnaty" vaccine -but Comirnaty is not available in Pennsylvania, rendering this fact meaningless for all operative purposes. In fact, Comirnaty received a biological license for one (1) day. Even if Comirnaty was available or other vaccines were licensed, these vaccines are all still undergoing clinical trials and are blatantly experimental.  Defendants will be unable to produce a single employee in Allegheny County who received any vaccine that was not under EUA status only.

86.      Under international, national, state, and local laws, experimental medical products cannot be mandated.

87.      All vaccines, including these, can cause harm to some people. People with natural immunity face a greater risk of harm from COVID-19 vaccines, as do certain demographic groups represented in this class - including men under twenty-five and people with certain pre- existing conditions.

88.      Under the United States Constitution, people also have a fundamental right to refuse

any medicine, whether it is experimental or not, even lifesaving medication.

89.     Considering the serious rights at stake and the absence of evidence to show this policy is necessary or effective because the vaccinated can transmit disease and have inferior immunity to those who have caught the disease, there is no rational reason to mandate vaccines for County employees.

90.     The Fitzgerald Mandate is not narrowly tailored to impose the least restrictive burdens on fundamental rights. Rather, it is intentionally tailored to create an excessive burden to coerce participation in experimental medicine for no apparent reason.

WHEREFORE, Plaintiff asks the Court to declare that the Fitzgerald Mandate is facially and as applied invalid because it violates the substantive due process rights of all County employees, as well as hybrid rights under the First and Fourteenth Amendments, to permanently enjoin their enforcement against employees asserting a sincere religious objection to vaccination, and to order the County to restore Plaintiff to their county employment with back pay, lost wages, medical expenses, interest, restoration of time in service and seniority, and to award actual, consequential, compensatory, pecuniary, and punitive damages to Plaintiff, and costs related to commencing and prosecuting this action, and any other relief this Court deems fair and equitable.

## COUNT V

### (Violation of Powers Under the Home Rule Charter)

91.     Plaintiff incorporates all the previous paragraphs herein.

92.     Defendant County Executive Fitzgerald did not possess powers vested in him pursuant to the county's Home Rule Charter to issue the Fitzgerald Mandate.

93.     Under the Home Rule Charter, the Fitzgerald Mandate, as a new ordinance,

regulation, or employment policy requiring all County employees to receive the COVID-19 vaccine as a term and condition of employment, could only be passed by the County Council.

WHEREFORE, Plaintiff asks the Court to find that the Fitzgerald Mandate was *ultra vires* and void *ab initio* and to order the County to restore Plaintiff to his county employment with back pay, lost wages, medical expenses, interest, restoration of time in service, and seniority, and to award actual, consequential, compensatory, pecuniary, and punitive damages to Plaintiff, and costs related to commencing and prosecuting this action, and any other relief this Court deems fair and equitable.

## COUNT VI

## TITLE VII DISCRIMINATION, RETALIATION, WRONGFUL DISCHARGE

94.     Plaintiff incorporates by reference the allegations set forth in the preceding paragraphs as if fully restated herein.

95.     Defendant fired Plaintiff because of his or her religion in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e-(j), and 2000e-2(a)(l).

96.     Defendant failed and refused to reasonably accommodate Plaintiff's religious observances and/or practices, in violation of Title VII.

97.     As a direct result of Defendant's violation of Title VII, Plaintiff has lost wages and other economic benefits of his or her employment with Defendant, in addition to suffering emotional distress, depression, inconvenience and humiliation.

98.     Defendant's policy of denying all exemptions and instead forcing its will upon Defendant to get the vaccine against his or her religious beliefs is blatant discrimination and

17

retaliation and wrongful discharge for exercising his or her religious beliefs.

**WHEREFORE**, Plaintiff requests the following:

a.   That the Court enter a judgment declaring Defendant's actions to be unlawful and in violation of Title VII of the Civil Rights Act;

b    That Defendant be ordered to reinstate Plaintiff and provide him accumulated seniority, fringe benefits and all other rights;

c.    That Defendant be required to compensate Plaintiff for the full value of wages he or she would have received had it not been for Defendant's illegal treatment of Plaintiff, with interest from the date of discrimination, in addition to reimbursement for lost pension, experience, training opportunities and other benefits;

d    That the Court award Plaintiff compensatory damages as a result of Defendant's violations of Title VII of the Civil Rights Act;

e.   That Defendant be enjoined from discriminating against Plaintiff in any manner that violates Title VII of the Civil Rights Act;

f.    That Plaintiff be awarded against Defendant the costs and expenses of this litigation and a reasonable attorney fee; and

g.   That the Court grants Plaintiff additional relief as may be just and proper.

## COUNT VII
## RELIGIOUS DISCRIMINATION PURSUANT TO PHRA

99.   The foregoing paragraphs are incorporated by reference as though the same were set forth more fully herein.

18

100.    Plaintiff is a member of protected class pursuant to the PHRA, in that he or she had sincerely held religious beliefs that were ignored by Defendant. Defendant failed to engage in any meaningful interactive process and failed to offer any reasonable accommodations.

101.    At all times relevant hereto, Plaintiff satisfactorily performed all of his or her job duties.

102.    Defendant terminated Plaintiff because of his or her religious beliefs when it failed to accommodate his or her sincerely-held religious beliefs resulting in the damages as set forth more fully hereinabove.

WHEREFORE, Plaintiff respectfully requests this Honorable Court enter judgment in his her favor and direct Defendant to:

a.    Award Plaintiff compensatory damages, including lost wages, employment benefits, back pay, interest, reinstatement and any and all other pecuniary damages for violation of their rights and for the injuries they has suffered as a result of Defendant's conduct;

b.    Award Plaintiff pre-judgment and post-judgment interest;

c.    Award Plaintiff the costs of this action, including reasonable attorney's fees and reasonable expert witness fees; and

d.    Award any such further relief as this Court may deem, just, proper and equitable and as permitted under 43 P.S. §951 *et seq.*

## COUNT VIII

## ADA

103.    The foregoing paragraphs are incorporated by reference as though the same were set forth more fully herein.

104.    Defendant fired Plaintiff because Defendant perceived Plaintiff as disabled under the

19

Americans with Disability Act. ("ADA").

105. Defendant submitted medical evidence from her treating doctor that she should not get the covid vaccine as it could cause significant health problems and/or death, rendering her medical condition a disability under the ADA.

106. Defendant failed to even engage in the interactive process to discuss Plaintiff's perceived or actual disability in violation of the ADA. Plaintiff's medical condition, as outlined by her treating doctor, made her pre-existing condition qualify as a disability under her ADA.

107. Plaintiff submitted evidence she had natural immunity against covid which Defendant completely ignored despite data that natural immunity was more effective than the vaccine.

108. The perceived disability in this case is Plaintiff's unvaccinated status.

109. In all other respects, Plaintiff was ready, willing and able to continue her employment with Defendant. It was only her perceived disability that caused Defendant to fire Plaintiff.

**WHEREFORE**, Ms. Spirko requests the following:

a. That the Court enter a judgment declaring Defendant's actions to be unlawful and in violation of ADA and the Civil Rights Act of 1964.

b. That Defendant be ordered to reinstate Plaintiff and provide her accumulated seniority, fringe benefits and all other rights;

c. That Defendant be required to compensate Plaintiff for the full value of wages she would have received had it not been for Defendant's illegal treatment of Plaintiff, with interest from the date of discrimination, in addition to reimbursement for lost pension, experience, training opportunities and other benefits;

d. That the Court award Plaintiff compensatory and punitive damages as a result of Defendant's violations of the ADA and the Civil Rights Act of 1964;

e. That Defendant be enjoined from discriminating against Plaintiff in any manner

20

that violates ADA;

   f. That Plaintiff be awarded against Defendant the costs and expenses of this

litigation and a reasonable attorney fee; and

   g. That the Court grants Ms. Spirko additional relief as may be just and proper.


         Respectfully submitted,

         The Welsh Law Group, LLC

         _____

         James L. Welsh, III
         PA I.D. #58790
         Counsel for Plaintiff


## CERTIFICATE OF COMPLIANCE

I certify that this filing complies with the provisions
of the *Case Records Public Access Policy of the
Unified Judicial System of Pennsylvania* that require
filing confidential information and documents
differently than non-confidential information
and documents.

Submitted by Plaintiff

_____
James L. Welsh, III, Esquire
Attorney I.D. #58790

## **ATTORNEY'S VERIFICATION**

I, James L. Welsh, III, Esquire, certify that I am authorized to make this Verification and I have read the foregoing Complaint and verify that the statements therein are correct to the best of my personal knowledge, information and belief.

This Verification is made subject to the penalties of 18 Pa. C.S.S. §4904, relating to unsworn falsification to authorities, which provides that if I make knowingly false statements I may be subject to criminal penalties.

| | |
|---|---|
| 10/19/23 | |
| Date | James L. Welsh, III, Esquire |